IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

SUPRIYA GOYAL, M.D.,

    Plaintiff,

       v.                      CIVIL NO.: WDQ-08-0020

THERMAGE, INC.,

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Dr. Supriya Goyal Bellew[1] sued Thermage, Inc. ("Thermage")
for negligence, strict products liability, and breach of implied
warranties. For the following reasons, Thermage's motions in
limine to exclude expert testimony of Al Vangura, Jr. and Dr.
Beth Murinson and certain other evidence, and Bellew's omnibus
motion in limine to exclude certain evidence, were denied.

I. Background

In September 2004, Bellew began working as a cosmetic
dermatology research fellow at the Maryland Laser, Skin, and
Vein Institute ("MLSVI"). Bellew Dep. 90:17-91:3. Bellew
treated patients using a ThermaCool device developed by Thermage
to reduce the signs of aging in skin. *Id.* 124:3-16. The
ThermaCool device has a handpiece, which the operator holds to a

---

[1] The Court will refer to the Plaintiff by her legal surname,
"Bellew." Supriya Goyal Bellew Dep. 6:7-19, March 12, 2009.

patient's skin while pressing a button or foot pedal to deliver radio frequency pulses. *Id*. 111:8-112:5, 135:4-7. Dr. Robert Weiss and his wife Dr. Margaret Weiss--both physicians at MLSVI--taught Bellew how to use the device. *Id*. 130:9-10; Margaret Weiss Dep. 174:2-8.

In Fall 2004, Bellew developed soreness and pain in her hand, arm, shoulder, and neck, which she associated with use of the ThermaCool device. Bellew Dep. 208:13-20. On January 4, 2005, Bellew delivered two ThermaCool treatments and developed severe pain. *Id*. 170:6-8, 209:3-7, 213:18-214:4. On January 18, 2005, Bellew was diagnosed with "irritation [of her] right ulnar nerve secondary to repetitive motion," which "appear[ed] directly related to her use of the Thermage machine." ECF No. 64, Ex. 8. A surgeon referred Bellew to Murinson for treatment of "neuropathic pain of her arm" in 2005. Murinson Dep., ECF No. 94, Ex. 1, 42:2-20.

On January 2, 2008, Bellew sued Thermage for negligence, strict products liability, and breach of warranties. ECF No. 1.[2] Bellew retained Vangura, a biomechanical engineer, to review the design process of the ThermaCool device. ECF No. 105 at 2, Ex. 2 at 1. Trial began September 12, 2011. A motions hearing was held that morning.

---

[2] On July 1, 2010, this Court granted summary judgment to Thermage on Bellew's breach of warranties claims. ECF No. 80.

II. Thermage's Motions in Limine to Preclude Expert Testimony

Thermage moved to preclude the testimony of Vangura and Murinson under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993).

A. Rule 702 and *Daubert*

Under Rule 702, expert testimony is admissible if it will assist the trier of fact and is (1) "based upon sufficient facts or data," (2) "the product of reliable principles and methods," and (3) "the principles and methods [have been applied] reliably to the facts of the case." Fed. R. Evid. 702. As the *Daubert* Court has explained, evidence is admissible under Rule 702 if "it rests on a reliable[3] foundation and is relevant."[4] *Daubert,*

---

[3] Several factors may establish reliability, including: (1) whether a theory or technique has been tested, (2) whether it has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory or technique is generally accepted within a relevant scientific community. *Copper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001). The factors are "neither definitive nor exhaustive, and some may be more pertinent than others depending on the nature of the issue, the expert's particular expertise and the subject of his testimony." *Newman v. Motorola, Inc.,* 218 F. Supp. 2d 769, 733 (D. Md. 2002).

[4] Evidence is relevant if it has any tendency to prove or disprove any material issue of fact in a case. Fed. R. Evid. 401. Relevance "typically presents a low barrier to admissibility." *United States v. Leftenant,* 341 F.3d 338, 346 (4th Cir. 2003). To be admissible, "evidence need only be worth consideration by the jury." *Id.* (internal citations and quotation marks omitted). Flaws in the evidence affect its weight, not its relevance or admissibility. 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 401.06 (Joseph M. McLaughlin, ed., 2d ed. 2008).

509 U.S. at 597; *see also Kuhmo Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999) (extending *Daubert* to "the testimony of engineers and other experts who are not scientists"). The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. *Id.* at 590.

To be admissible, the expert testimony need not be "irrefutable or certainly correct." *United States v. Moreland,* 437 F.3d 424, 431 (4th Cir. 2006). The court's task is not to decide the correctness of the opinion, and "[a]s with all other admissible evidence, expert testimony is subject to testing by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.* (internal quotation marks and citation omitted).

B. Motion in Limine to Preclude Vangura's Testimony

Thermage argued that Vangura's testimony is inadmissible because: (1) he is not qualified to offer opinions on the device's ergonomic design, (2) he offers no reliable opinion about causation, (3) he did not form his design opinion using the accepted scientific method, (4) he did not provide a safer and feasible alternative design, (5) the foreseeability of Bellew's injury is for the jury to decide, and (6) Thermage had no legal duty to warn against obvious repetitive use hazards. Mot. In Limine to Preclude Test. and Ops. of Pl's. Expert Al

Vangura, Jr. 1-2. Bellew countered that Thermage's contentions were "meritless." ECF No. 106 at 1.

1. Vangura's Qualifications

Thermage contended that Vangura has done no work involving equipment "remotely similar" to the ThermaCool device. Mem. Supporting Def's. Mot. In Limine to Preclude Test. and Ops. of Pl's. Expert Al Vangura, Jr., ECF No. 93 at 15. Bellew responded that Vangura has "sufficient education, training, and experience." ECF No. 106 at 25.

Vangura has a master's degree in bioengineering, a bachelor's degree in exercise and sports science biomechanics, and an associate's degree in mechanical engineering technology. He has previously helped develop orthopedic devices and wheelchairs. Vangura Dep. 27:20-24. He has worked on cases involving such diverse medical devices as an orthopedic implant, a wheelchair, and a motorized shopping cart. *Id.* at 16:18-17:12. In each case, he analyzed the "mechanism of injury" and the "postures associated with acute events after or before the injury." *Id.* at 476:1-11.

Based on his education and training, Vangura is qualified to offer an opinion about how the design of the ThermaCool affected a user's posture and created a risk of injury.

5

2. Causation Opinion

Thermage argued that Vangura has not evaluated epidemiological evidence and lacks a medical degree; thus, he cannot offer an opinion that the ThermaCool caused Bellew's alleged injury.[5] ECF No. 93 at 15. Bellew countered that Vangura's reference to "several authoritative studies" supports his causation opinion. ECF No. 106 at 29.

Because Vangura is not a medical doctor, he cannot testify about whether Bellew has ulnar neuropathy.[6] He can, however, testify that repetitive movement is linked to nerve entrapment

---

[5] Thermage contends that three findings in Vangura's report are inadmissible:

   (4) Thermage's failure to provide a reasonably safe and adequate handpiece is a design defect and was the cause of Bellew's injury.

   (14) Had Thermage minimized joint and soft-tissue stresses and strains during product development of the ThermaCool TC Handpiece, Bellew would not have been injured.

   (20) Thermage's failure to provide adequate safety instructions and warnings is a design defect and was the cause of Bellew's injury.

[6] See Magdaleno v. Burlington N.R. Co., 5 F. Supp. 2d 899, 906 (D. Colo. 1998) (ergonomics expert "is not a physician" and "therefore not qualified as an expert to opine as to [Plaintiff's] medical condition").

disorders and that using the Thermage device involved repetitive movement.[7]

### 3. Scientific Method

Thermage argued that Vangura's methodology is flawed because he did not rely on any ThermaCool research or studies; conducted none himself; took no "meaningful" measurements of Bellew, the device she used, or her work space; and his opinion was not subjected to peer review and cannot be tested. ECF No. 93 at 20.

Vangura's methodology and conclusions are based on several published studies, a ThermaCool handpiece, Thermage design documents, a Thermage instructional video, Bellew's height and weight, and interviews with Bellew. ECF No. 106 at 2, 5, Ex. 1. The Court has determined that similar sources make the opinion of Thermage expert Larry Fennigkoh reliable under *Daubert* and

---

[7] Vangura's report cites a scientific study that links "holding a tool in position, repetitively" with nerve entrapment disorders. ECF. No. 106 at 30, Ex. 1, Ex. 9 at 1. In *Magdaleno*, the court allowed an ergonomics expert to testify that four risk factors contributed to cumulative trauma disorders because published studies established the link. *Magdaleno*, 5 F. Supp. 2d at 903-04. That court also found that Rule 702 did not prohibit the expert from testifying that he observed three of the factors--joint deviation, force exertion, and vibration--in people using machines at the defendant's facility. *Id.* at 902-03. *See also Benedi v. McNeil P.P.C., Inc.*, 66 F.3d 1378, 1384 (4th Cir. 1995) ("Under the *Daubert* standard, epidemiological studies are not necessarily required to prove causation, as long as the methodology employed by the expert in reaching his or her conclusion is sound.").

Rule 702.[8]  Moreover, any asserted flaws in Vangura's conclusions are the proper subject of cross-examination.[9]

4. Safer, Alternative Design

The parties disputed the appropriate test for proving products liability.  Bellew argued for the consumer expectation test, which evaluates whether a product is unreasonably dangerous based on what a user would properly expect the product to be suited for.  *Halliday v. Sturm, Ruger & Co.*, 368 Md. 186, 193, 792 A.2d 1145, 1150 (2002).  Thermage argued for the risk-utility test, which focuses on whether the benefits of a product outweigh the dangers of the design.  *Id.* at 194, 792 A.2d at 1150.  Under the risk-utility test, "the issue usually becomes whether a safer alternative design was feasible."  *Id.*  Thermage argued that Vangura has failed to propose "an alternative design that moves beyond idle brainstorming."  ECF No. 93 at 24.

Vangura's testimony is admissible under either test.  If the risk-utility test applies, Thermage has conceded that Vangura has proposed at least three alternative designs: a "gun-

---

[8] The Court listed the bases of Fennigkoh's methodology and conclusions as "several published studies, measurements of Bellew's hand and the device, Bellew's testimony, and ThermaCool procedure demonstrations."  ECF No. 87 at 7 n.7.

[9]  "The district court must exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the jury, otherwise, the factual basis of the testimony goes to the weight of the evidence."  *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004).

shaped" design, an "arch-shaped" design, and a design that would force the use of a "pencil grip." ECF No. 95, at 7. Whether Thermage was reasonable in choosing a particular design is for the jury to determine. *See Pinney v. Nokia*, 402 F.3d 430, 443 (4th Cir. 2005). Thermage is free to attack the alternative designs on cross-examination. *See Moreland,* 437 F.3d at 431.

5. Foreseeability of Bellew's Injury

Thermage contended that Vangura must not testify that the harm from the ThermaCool was foreseeable, because "[a]n expert's statement on foreseeability constitutes an observation rather than an expert opinion." ECF No. 93 at 30. That the statement is nothing more than an observation means only that Rule 702 does not apply. *See Magdaleno*, 5 F. Supp. 2d at 903 (an observation that is not an expert opinion is not subject to Rule 702 scrutiny). If Thermage contends that the statement is inadmissible for any other reason, it should raise it at trial.[10]

6. Legal Duty to Warn

Thermage argued that Vangura's opinion on the duty to warn is inadmissible, because the company had no duty. ECF No. 93 at

---

[10] Thermage correctly contends that foreseeability is generally a jury question. *Moran v. Faberge, Inc.*, 273 Md. 538, 555, 332 A.2d 11, 21 (1975). In Maryland, a manufacturer owes a duty to warn "if the item it produces has an inherent and hidden danger about which the producer knows, or should know, could be a substantial factor in bringing injury to an individual" who uses the item in a reasonably foreseeable way. *Id.* at 552, 332 A.2d at 20.

31.  Thermage contended that "there is no duty to warn of the self evident: an injury may arise if one repeats the same physical task numerous times in rapid succession without a break."[11]  Bellew countered that the defense is illogical because Thermage has simultaneously contended that the device caused no harm.  ECF No. 106 at 33.

Thermage has not established that using the ThermaCool would cause chronic pain "self-evident" in the way that "gasoline is flammable," "driving at high speeds in rain at night can cause accidents," or "non-stop typing can lead to manual fatigue or pain."  *Hopkins*, 1994 WL 757510, at *13. Thus, the jury should decide whether a duty to warn existed.

C. Motion in Limine to Preclude Murinson's Testimony

Thermage argued that Murinson's causation testimony is inadmissible because: (1) she failed to consider other possible causes, (2) she used unreliable sources, (3) she did not rely on an accepted scientific method, and (4) her opinion was not properly disclosed under Fed. R. Civ. P. 26.  Mem. Supporting Def's Mot. In Limine to Preclude Beth Murinson, M.D.'s Causation Test., ECF No. 94 at 8-20.  Bellew countered that *Daubert* "was never intended to keep the jury from hearing a treating

---

[11] *Id.* at 31-32 (*citing Hopkins v. NCR Corp.*, CIV. A. 930188-B-M2, 1994 WL 757510, at *13 (M.D. La. Nov. 17, 1994), *aff'd* 53 F.3d 1281 (1995) (per curiam)).

physician's opinion as to the cause of the plaintiff's injury."
ECF No. 103 at 1.

1. Reliability of Murinson's Opinion

Thermage argued that Murinson lacks the proper foundation
to offer a reliable opinion on the cause of Bellew's neuropathy.
ECF No. 94 at 1-2. Thermage also contended that Murinson failed
to properly dismiss other causes because she did not refer
Bellew to a surgeon "to rule out the possibility of an
anatomical predisposition," order an "ergonomic study to analyze
the patient's daily activities," or consider why Bellew had
neuropathy in her left arm.[12]  *Id.* at 11-13. Thermage argued
that Murinson relied solely on Bellew's self-reporting. *Id.* at
16.

Bellew countered that Murinson properly formed her
causation opinion from her examinations of Bellew, her medical
records and test results, and the proximity of Bellew's use of
the ThermaCool to her symptoms. ECF No. 103 at 9. Bellew
argued that Thermage can raise any alleged flaws in this
approach through cross-examination and presentation of contrary
evidence. *Id.*

"[D]ifferential diagnosis provides a valid foundation for
an expert opinion." *Westberry v. Gislaved Gummi AB*, 178 F.3d

---

[12] Bellew used the ThermaCool with her right arm. ECF No. 94 at
13.

11

257, 263 (4th Cir. 1999). This "standard scientific technique" identifies the cause of a medical problem by eliminating all other likely causes through physical examinations and review of medical histories and clinical tests. *Id.* at 262. A doctor's causation opinion should not be excluded simply because she has "failed to rule out every possible alternative cause." *Id.* at 263 (internal citation and quotation marks omitted). Thermage is free to raise this and any other perceived flaws during cross examination.

2. Disclosure

The disclosure of expert testimony is governed by Fed. R. Civ. P. 26[13] and Local Rule 104.10. Local Rule 104.10 excludes hybrid fact/expert witnesses, such as treating physicians, from the Rule 26 requirement of a written report. A party must disclose only the existence of the witness, the subject about which she will testify, and a summary of the facts and opinions the witness will state. An adverse party can also obtain the

---

[13] Under Rule 26, a party must disclose the identity of any expert witness it may use at trial. Fed. R. Civ. P. 26(a)(2)(A). If the witness is "retained or specially employed to provide expert testimony", the party must also produce a written report prepared and signed by the witness. *Id.* at (a)(2)(B). A party that fails to make these disclosures may be barred from using that witness or information at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

opinions through interrogatories, document production requests, and depositions.

Whether a treating physician is a hybrid witness and must produce a written report depends on the nature of her testimony, not merely her status. *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D. Md. 1997). If she formed her opinion during her treatment of the patient, not from facts an attorney provided, no report is required.[14] *Id.* at 501.

Murinson was allowed to testify at trial. Murinson based her opinion on her treatment of Bellew. The parties agreed that certain hybrid medical experts--"including those who may be opining on the issue of causation"–-would not be considered experts under Rule 26. ECF No. 103, Ex. 3, at 3. Moreover, any failure to disclose under Rule 26 was harmless. Murinson provided her causation opinion during her deposition, and Bellew identified Murinson in interrogatories and produced Murinson's medical records. Thus, Thermage's motion to exclude Murinson's testimony was denied.

---

[14] Thermage contended that Murinson formed her causation opinion outside her role as a treating physician. ECF No. 94 at 20.

III. Thermage's Motion to Exclude or Limit Certain Evidence

Thermage moved to exclude or limit the following evidence:

A. Bellew's Chronic or Permanent Injury Was Caused by the Thermacool Device

Thermage sought to exclude testimony by Murinson, Vangura, or Bellew that Bellew suffers a "chronic or permanent injury" from using the ThermaCool device. Mem. Supporting Def's. Omnibus Mot., ECF No. 95 at 3-6. Murinson has testified that "it would certainly be reasonable to ascribe a diagnosis of persistent or chronic pain to [Bellew]." Murinson Dep., ECF No. 105, Ex. 1 at 177:20-22. For the reasons stated above,[15] Murinson's testimony is admissible and subject to Thermage's cross-examination. This part of the motion was denied.

B. Alternative Design Theories

Thermage moved to limit Vangura's testimony to alternative designs mentioned in his report. ECF No. 95 at 7-8. Thermage argued that evidence of the ThermaCool design process should be excluded because Vangura cannot relate the device's dimensions to Bellew's injury. *Id.* at 8. For the reasons stated above,[16] this part of the motion was denied.

---

[15] *See supra* Part II.C.

[16] *See supra* Part II.B.

C. Others' Complaints of Discomfort, Fatigue, and Cramping

Thermage moved to exclude evidence that, before Bellew's reported injury, it had other reports of pain, discomfort, cramping, or fatigue from its devices. ECF No. 95 at 9. Thermage contended that any such reports are irrelevant because: (1) they were not "indicative" of Bellew's injury or any other serious injury, or (2) they related to an earlier generation of the device, which had a "completely different design." *Id.*

Bellew countered that, because she suffered discomfort, stiffness, and soreness, any other reports of these symptoms are relevant. ECF No. 105 at 10, 12. She further contended that evidence that a predecessor device caused cramping is relevant to whether Thermage was negligent in designing the device or failing to issue a warning. *Id.* at 9-11. Thermage engineer Bryan Weber noted that a doctor experienced cramping when using the predecessor device, which Thermage described in a letter to the FDA as "substantially equivalent" to the device Bellew used. ECF No. 105, Ex. 3, 4.

Reports of other complaints tend to prove that Thermage had notice of a defect that needed to be corrected in the next version of the device. Thus, the Court denied this portion of the motion to exclude.

D. Robert Weiss as Thermage's Agent, Consultant, or Employee

To rebut Thermage's assumption of the risk defense, Bellew plans to show that Weiss taught Bellew how to use the ThermaCool and had significant ties to Thermage. ECF No. 105 at 19-20.

To establish assumption of the risk in a products liability action, the defendant must show that the plaintiff (1) knew and appreciated the risk of danger, (2) voluntarily confronted that risk, and (3) was unreasonable in her decision to encounter the known risk. *Ellsworth v. Sherne Lingerie*, Inc., 303 Md. 581, 495 A.2d 348, 356 (Md. 1984). The test of whether the plaintiff knew, appreciated, and voluntarily confronted "the risk involved in a particular situation is an objective one . . . and ordinarily is a question to be resolved by the jury." *Morgan State Univ. v. Walker*, 397 Md. 509, 919 A.2d 21, 24, 26-27 (Md. 2007) (internal citations omitted).

The parties disputed whether Bellew appreciated the risk of danger and was unreasonable in continuing to use the device until January 2005. ECF No. 79 at 14-15. Bellew argued that she did not fully appreciate the risk or act unreasonably, in part because Weiss taught her how to use the device, told her that she was using it correctly, and assured her that discomfort was normal. *Id.* at 15. Weiss has been a paid speaker for Thermage, and his website describes Weiss as "an internationally recognized expert on Thermage." ECF No. 105, Ex. 10, at 1, 3-7.

16

Evidence of Weiss's ties to Thermage tend to prove that Bellew did not appreciate the risk and was reasonable in continuing her use of the ThermaCool. Thus, this part of the motion was denied.

IV. Bellew's Omnibus Motion to Exclude Certain Evidence

Bellew moved to exclude the following evidence:

A. Video of Bellow Holding the ThermaCool device

Bellew moved to exclude a video of her deposition, when Thermage's attorney asked her to demonstrate her use of the ThermaCool device, and Bellew said she could not recall. Bellew contends that the evidence amounts to "trial by ambush," because: (1) Thermage did not comply with Bellew's discovery request to produce the device for inspection before the deposition, (2) about five years had passed since Bellew had last handled the device, (3) the device at the deposition was not identical to the one Bellew had used, and (4) Bellew, who is right-handed, had to hold the device in her left hand because of her injury. ECF No. 99 at 2-4. Thermage countered that "the factual crux of [Bellew's] claim is how she held the device" and that a jury should consider that Bellew "had absolutely no memory of how she held the device." ECF No. 104 at 1-2.

On August 15, 2008, Bellew requested that Thermage produce within 30 days "every version/exemplar of the ThermaCool device." ECF No. 99, Ex. 1 at 2, 5. Bellew's deposition was in

March 2009.  ECF No. 99 at 3.  In the intervening months, Bellew

filed no motion to compel Thermage to produce the device.[17]  She

cannot complain now about the delay.  She can, however, argue to

the jury that the video demonstration lacks weight because of

the passage of time, Bellew's injury, and the differences

between the device Bellew held at work and at the deposition.

Thus, this part of the motion was denied.

   B. Evidence Contrary to the Positions of Thermage's Rule

      30(b)(6) Designee

   Bellew moved to exclude evidence that: (1) supplements the

designee's "I don't know" responses, or (2) contradicts the

designee's testimony, particularly his statement that Thermage

did not dispute that Bellew suffers from ulnar neuropathy.  ECF

No. 99 at 6-9.  Thermage countered that it was improper for

Bellew to ask the designee about her medical condition without

first seeking an answer through interrogatories.  ECF No. 104 at

4.

   This part of the motion was denied.  Bellew has not

explained how this evidence would harm her.  Deposition

statements by Thermage's designee, Richard Hatch, constitute

party admissions under Fed. R. Evid. 801(d)(2).  Thus, Bellew

_____

[17] *See* 8A Charles Alan Wright, Arthur R. Miller & Richard L.
Marcus, *Federal Practice & Procedure* § 2207 (2d ed. 1994) (if a
party objects to a discovery request, "it is for the discovering
party to decide whether to pursue the matter further").

can introduce them to rebut any inconsistent statements at
trial.

C. Prior Litigation

Bellew moved to exclude her lawsuit against MLSVI as
impermissible character evidence of her "propensity for
litigiousness." ECF No. 99 at 9. Thermage responds that
Bellew's prior statements in the MLSVI litigation are admissions
under Fed. R. Evid. 801(d)(2) that show Bellew's inconsistencies
about: (1) the timing and circumstances of her injury, (2) the
reasons for her marital problems and divorce, and (3) the reason
for her termination from MLSVI. ECF No. 104 at 5-7.

Thermage correctly characterizes Bellew's statements in
prior litigation as party admissions. *See* 5 Jack B. Weinstein &
Margaret A. Berger, *Weinstein's Federal Evidence* § 801.30
(Joseph M. McLaughlin, ed., 2d ed. 2008). Thus, this part of
Bellew's motion was denied.

D. Thermage's Current Popularity

Bellew conceded that Thermage should be allowed to present
testimonials about the ThermaCool device that date from the time
of Bellew's use. ECF No. 99 at 14. She argued, however, that
the current popularity of the company and its device is
impermissible character evidence under Fed. R. Evid. 404. *Id.*
at 13. Thermage countered that Rule 404 is inapplicable;
Thermage should be allowed to rebut Bellew's claims that the

device is defective with evidence that practitioners currently use and praise the device. ECF No. 104 at 8. Thermage further contended that it should be able to cite such evidence to counter Bellew's arguments that Thermage failed to investigate complaints from ThermaCool users. *Id.*

In products liability cases alleging design defects, "most courts routinely admit evidence regarding the absence of other occurrences or accidents involving the product in issue." 3 Louis R. Frumer, Melvin I. Friedman & Carey Stewart Sklaren, *Products Liability* § 18.02 (Matthew Bender, rev. ed.). But the proponent must "show that the absence of such claims occurred when others were using the same product as the injured party under conditions substantially similar to those conditions present when the injury occurred." *Id.*

Because these issues are better resolved at trial, this part of the motion was denied.

E. Delay in Suing

Without legal support, Bellew moved to exclude evidence that she delayed suing Thermage. ECF No. 99 at 15. Thermage countered that exclusion would make it impossible to explain to jurors its statute of limitations defense. ECF No. 104 at 8-9. In a products liability tort action, "the statute of limitations [does] not begin to run until the plaintiff knows or through the exercise of due diligence should know of injury, its probable

20

cause, and either manufacturer wrongdoing or product defect."
*Pennwalt Corp. v. Nasios*, 314 Md. 433, 452, 550 A.2d 1155, 1165
(Md. 1988). The parties dispute when Bellew knew or should have
known that she was injured and had a potential claim against
Thermage. ECF No. 79 at 11.

Whether a plaintiff sued within the limitations period is a
question of law for the court; the jury, however, finds the
facts necessary for the court's determination. *Poffenberger v.
Risser*, 290 Md. 631, 633-34, 431 A.2d 677, 679 (1981). Thus,
this part of Bellew's motion was denied.

F. Testimony of Other Doctors Who Reported Discomfort Using
the ThermaCool Device

Thermage has not named any of the commenters as witnesses.
ECF No. 109 at 20. Thus, this part of the motion was denied as
moot.

G. "No One Else Was Injured" by ThermaCool

Bellew asked the Court to bar Thermage from presenting a
defense that "no one else was injured" by the device. ECF No.
99 at 22. Thermage said it will not argue that no one else was
injured. ECF No. 109 at 21. Thus, this part of Bellew's motion
was denied as moot.

21

H. Testimony of Drs. Michael Kaminer, Flor Mayoral, and Genevieve Holgate-Palmer

Without elaboration, Bellew moved to exclude these witnesses because "[n]one is likely to provide any relevant testimony." ECF No. 99 at 22. Thermage countered that:

- Kaminer will testify about why he holds the device as he does in a Thermage training video. ECF No. 104 at 13. Bellew's expert Vangura viewed the video in forming his opinion about whether Thermage provided proper instructions. ECF No. 104, Ex. 5, at 401:14-402:17, 405:9-412:4.

- Mayoral will testify about her use of the ThermaCool device. ECF No. 104 at 13-14. Vangura identified Mayoral as a doctor who complained of discomfort when using the device and considered that in forming his opinion. ECF No. 104, Ex. 5, at 390:1-391:24. Thermage Engineer Bryan Weber also said at his deposition that he visited Mayoral and discussed her use of the device. 281:5-285:18.

- Holgate-Palmer is Bellew's current supervisor and will testify about whether she has accommodated Bellew's claimed injury. ECF No. 104 at 14.

Each of the witnesses will offer testimony "worth consideration by the jury." *Leftenant*, 341 F.3d at 346. Thus, this part of Bellew's motion was denied.

I. Proof of Injury Before 2005

Bellew moved to exclude Dr. William Baugher from testifying that Bellew likely suffered from repetitive use or nerve injury before 2005 because the testimony "is extraordinarily prejudicial, and will certainly confuse the jury." ECF No. 99 at 22-25. Thermage countered that Baugher will testify only that, had he known Bellew's medical history and treated her in Fall 2004, he would have suspected ulnar neuropathy and ordered electrical studies.[18] ECF No. 104 at 14-16. Thermage argued that such evidence tends to prove that Bellew should have known that she had an injury in Fall 2004 and failed to sue within the statute of limitations. *Id.* at 14.

Baugher's testimony is relevant because it tends to prove that Bellew did not sue within the limitations period. *See* Fed. R. Evid. 401. Moreover, Bellew has failed to show that this evidence is unfairly prejudicial[19] or too confusing for the jury. The testimony would not require an "exhaustive case within a case." *United States v. Hill*, 322 F.3d 301, 306 (4th Cir. 2003). Thus, the Court denied this part of Bellew's motion.

---

[18] Thermage agreed that Baugher could not testify that Bellew would have been diagnosed with ulnar neuropathy. ECF No. 104 at 14.

[19] *See Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1134 ("All relevant evidence is 'prejudicial' in the sense that it may prejudice the party against whom it is admitted. Rule 403, however, is concerned only with 'unfair prejudice.'").

J. Bellew's Failure to File a Workers' Compensation Complaint

Thermage does not intend to introduce such evidence. ECF No. 104 at 16. Thus, this part of the motion was denied as moot.

K. FDA Database

The parties stipulated that: (1) Bellew will not introduce other users' complaints made after January 2005, and (2) Thermage will not argue that no one else was hurt by the device. ECF No. 109 at 25. Thus, this part of Bellew's motion was denied as moot.

L. Bellew's 2004 Car Accident

Without legal support, Bellew moved to exclude evidence of a 2004 car accident, because "[n]o expert in this case has opined that [Bellew's] incident with her car caused her any injury, let alone neuropathy." ECF No. 99 at 26-27. Thermage countered that Bellew, not Thermage, bears the burden of proving the cause of her injury. Thermage seeks to raise the car accident as a potential cause of Bellew's injury that her experts failed to consider. ECF No. 104 at 17-18.

Like lay witnesses, an expert is subject to "[v]igorous cross-examination." *Daubert*, 509 U.S. at 596. This may include questions about the factors the expert considered in forming her opinion. Thus, this portion of Bellew's motion was denied.

M. Alternative Causes of Ulnar Neuropathy

Without legal support, Bellew moved to exclude any evidence about alternative causes of her neuropathy, because "[n]o expert in this case has pointed to any other source than the ThermaCool device." ECF No. 99 at 27. Thermage countered that it should be allowed to question whether Bellew's experts considered other causes in forming their opinions. ECF No. 104 at 18. For the reasons cited above,[20] this part of the motion was denied.

N. Failure to Mitigate

Thermage does not intend to introduce evidence that Bellew failed to mitigate her damages. ECF No. 104 at 18. Thus, this part of the motion was denied as moot.

O. Thermage's Complaint System

Bellew moved to exclude testimony about Thermage's complaint system, "[t]o the extent that this testimony is based on written policies and procedures not produced." ECF No. 99 at 28. Bellew asked that any evidence of the policy be limited to the scope of the depositions, which addressed the policy in place from 2003 to 2005. *Id.* Thermage countered that Bellew never requested documents about the complaint system during discovery. ECF No. 104 at 19.

---

[20] *See supra* Part IV.L.

A party can inspect "designated documents" if the party "describe[s] with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34 (a)(1)(A), (b)(1)(A). A trial court has discretion in determining the sufficiency of the designation.[21] A party responding to a request for production must supplement its disclosure in a timely manner if: (1) it learns that "in some material respect" the production is incomplete, and (2) the additional information "has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1).

Bellew failed to make any request particular enough to require Thermage to produce its written policies or procedures for handling complaints. In her Request for Production of Documents she asked for "[a]ll documents which support any of the defenses you claim in this case, or which may be used at trial in this matter." ECF No. 104, Ex. 9 at 6. In her notice for the deposition of Thermage's corporate designee, Richard Hatch, Bellew asked for documents about "[a]dverse event

---

[21] *Tiedman v. Am. Pigment Corp.*, 253 F.2d 803, 807-09 (4th Cir. 1958) (trial court did not abuse discretion in denying plaintiff's request to examine all "books, records, and communications in any way pertaining to the contract" or "business relations" between the parties)(internal quotation marks omitted).

reports" but nothing about the complaint system.[22]  ECF No. 104, Ex. 8.  Thus, this part of Bellew's motion was denied.

III. Conclusion

For the reasons stated above, Thermage's motions in limine to exclude expert testimony of Al Vangura, Jr. and Dr. Beth Murinson and certain other evidence, and Bellew's omnibus motion in limine to exclude certain evidence, were denied.

_9/16/11_
Date

_William D. Quarles, Jr._
United States District Judge

---

[22] Even if Bellew's broad request for production had encompassed complaint system documents, Thermage disclosed details of the system in Hatch's deposition.  ECF No. 105, Ex. 5 at 307:4-311:21.  This satisfied Thermage's duty to supplement under Rule 26.